UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ALCIRA ORTIZ, AS NATURAL MOTHER AND
LEGAL GUARDIAN OF C.C., A MINOR CHILD,

                        Plaintiffs,                       Case No. 08-CV-2379 (SCR)

        - against -                   **DECLARATION OF**
                                               **JEFFREY J. IMERI**

HASBRO, INC., COSTCO, INC., and JOHN
DOES 1-15,

                        Defendants.
-------------------------------------------------------------X

        I, Jeffrey J. Imeri, Esq., declare under the penalty of perjury that the following is true and

correct:

        1.      I am a shareholder in the firm of Marshall, Dennehey, Warner, Coleman &

Goggin, attorneys for defendants Hasbro, Inc. (hereinafter "Hasbro") and Costco, Inc.

(hereinafter "Costco") in the above-captioned action and, as such, I am fully familiar with the

facts and matters stated herein.

        2.      I submit this Declaration in support of Hasbro's and Costco's motion to dismiss

the Plaintiffs' punitive damages claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure.  Pursuant to the Individual Rules of the Honorable Stephen C. Robinson, the

undersigned counsel for Hasbro and Costco conferred with Plaintiffs' counsel, Yovendra

Mangal, Esq., and a proposed briefing schedule has been submitted to the Court which provides

that Plaintiffs' opposing affidavits, declarations and/or answering memoranda of law, if any, will

be served and electronically filed by July 14, 2008; Hasbro's and Costco's reply affidavits,

declarations and/or answering memoranda of law, if any, will be served and electronically filed by August 4, 2008.

3.    Plaintiffs filed their Complaint on March 7, 2008. Attached hereto as Exhibit A is a true and correct copy of the Complaint in this action.

4.    The Complaint essentially asserts a product liability claim relating to a product known as the "Easy Bake Oven" which the Plaintiffs allege "was unreasonably dangerous to the users of the product and those around the product." Exhibit A at par. 8. Plaintiffs allege that Hasbro "was responsible for the design, manufacture, inspection, sale, distribution, and marketing of the Easy Bake Oven." Id. at par. 3. According to the Complaint, the Oven in question "was purchased as a Christmas present for Natasha Lazo, Plaintiff's ten-year old cousin, at the Costco store in Port Chester, Westchester County, New York." Id. at par. 6. Plaintiffs allege that, on or about February 20, 2007, Plaintiff "C.C.," a minor child, "suddenly had her hand entrapped in the opening of the Oven while the Oven was activated" and, as a result, "her hand started to burn inside the Oven." Id. at par. 6.

5.    Plaintiffs further allege that "[o]n July 19, 2007, the U.S. Consumer Product Safety Commission announced the recall of approximately 1,000,000 Easy Bake Ovens" because "young children could insert their hands into the oven's opening and get their hands or fingers caught, posing an entrapment or burn hazard." Exhibit A at par. 13. Plaintiffs contend that the Easy Bake Oven at issue in this action was "contained in the Recall." Id.

6.    The Complaint includes the allegations that the "Defendants," e.g. Hasbro *and* Costco, are responsible for the "defective design, workmanship, construction, manufacture, marketing, testing and investigation" relating to the Easy Bake Oven. Exhibit A at par. 9, 12, 35. However, it is common knowledge that Costco is a retail store, not a manufacturer, and

2

based on the Complaint's own allegations, it is clearly evident that Costo did not design, manufacture or construct the subject Easy Bake Oven. Rather, Costco is alleged to have been the retail seller given the Complaint's allegation that the Oven in question was purchased at a Costco store. Exhibit A at par. 6.

7.    The Complaint is comprised of the following nine causes of action that precede the Complaint's prayer for relief: (1) "Strict Liability and Product Liability, (2) "July 19, 2007 Recall of 1,000,000 Easy Bake Ovens," (3) "Breach of Express Warranties," (4) "Breach of Implied Warranty of Fitness," (5) "Implied Warranty of Merchantability," (6) "Willful and/or Negligent Infliction of Emotional Distress," (7) "Res Ipsa Loquitur," (8) "Damages," and (9) "Punitive Damages." Exhibit A at par. 7-46. The Complaint's prayer for relief seeks, among other things, "general damages," "compensatory damages," "consequential damages" and "punitive and exemplary damages." Id. at pp. 11-12.

8.    Although Plaintiffs allege, as previously noted, that the Oven was purchased at a Costco store, the Complaint largely fails to distinguish between Costco and Hasbro. Instead, Plaintiffs contend that Hasbro **and** Costco designed and manufactured the Oven (See Exhibit A at par. 9, 12, 35) and all nine of the Complaint's causes of action are directed to "Defendants," i.e., to both Hasbro and Costco. Id. at pp. 3-11.

9.    As discussed more fully in the accompanying Memorandum of Law submitted herewith in support of this motion, dismissal of the Complaint's punitive damages claims is warranted for at least two distinct reasons. First, the Complaint contains a cause of action for punitive damages which must be dismissed because no such cause of action may be pled under the applicable law of New York. Second, dismissal of the Plaintiffs' punitive damages claims is also warranted because the Complaint fails to plead any specific conduct by Hasbro or Costco

3

that can in any way be deemed sufficient to potentially impose punitive damages on those defendants.

10.    As a result, Hasbro and Costco respectfully request that the Court enter an Order: (1) dismissing the Complaint's cause of action for punitive damages, (2) dismissing the Complaint's claims for punitive damages against Hasbro and Costco and (3) for such further and/or other relief as this Court may deem proper in the circumstances.

11.    Oral argument with respect to this motion is respectfully requested.

12.    Attached hereto as Exhibit B, for the Court's reference and convenience, is a true and correct copy of this Court's decision in Cerveceria Modelo, S.A. v. Maracs Modelo, S.A., 2008 U.S. Dist. LEXIS 28999 (S.D.N.Y), a decision that was reported in LEXIS but not published in the official reporter.

13.    Attached hereto as Exhibit C, for the Court's reference and convenience, is a true and correct copy of this Court's decision in German v. Federal Home Loan Mortgage Corp., 1994 U.S. Dist. LEXIS 8716 (S.D.N.Y.), a decision that was reported in LEXIS but not published in the official reporter.


Dated:  New York, New York
         June 16, 2008


Jeffrey J. Imen (JI 3938)

**Exhibit A**

```
-------------------------------------------------X
UNITED STATES DISTRICT COURT                     :
SOUTHERN DISTRICT OF NEW YORK                    :
-------------------------------------------------X
```

ALCIRA C. ORTIZ, AS NATURAL MOTHER
AND LEGAL GUARDIAN OF C.C.,
A MINOR CHILD

                    Plaintiff,

          v.

HASBRO, INC., COSTCO, INC. and
JOHN DOES 1-15,

                    Defendants.

Case No.: **08 CIV 2379**

Demand for Jury Trial

JUDGE ROBINSON

## COMPLAINT

### JURY TRIAL REQUESTED

Plaintiff, ALCIRA C. ORTIZ, as Natural Mother and Legal Guardian of C.C., a minor child, and files this her Complaint, by and through counsel, and would show unto the Court as follows:

### JURISDICTION AND VENUE

#### 1.

This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 exclusive of interest and costs, and because the Plaintiff is a citizen of a different state than the Defendants.

### PARTIES

#### 2.

Plaintiff, C.C., is a minor child resident of Westchester County, New York. C.C. resides with her natural mother and legal guardian, Alcira C. Ortiz.

1

3.

Defendant Hasbro, Inc. (herein after "Hasbro") is a Rhode Island corporation whose principal place of business is located at 1027 Newport Avenue, Pawtucket, Rhode Island 02862, whose registered agent for service of process is Barry Nagler, who may be served by serving a copy of said Complaint at 1027 Newport Avenue, Pawtucket, Rhode Island 02862. At all times relevant, including at the time of the subject incident, Hasbro was responsible for the design, manufacture, inspection, sale, distribution, and marketing of the Easy Bake Oven. (hereinafter "Oven").

4.

Defendant Costco, Inc., is a Washington corporation whose principal place of business is located at 999 Lake Drive, Issaquah, Washington 98027, whose registered agent for service of process is John Sullivan, who may be served by serving a copy of said Complaint at 999 Lake Drive, Issaquah, Washington 98027. At all times relevant, Costco was doing business in New York in its retail store located at One Westchester Avenue, Port Chester, New York 10573.

5.

The identities of Defendants John Does 1-15 are unknown to Plaintiffs at this time but who designed, manufactured, inspected, sold, distributed, and marketed the Easy Bake Oven. This Complaint will be amended to insert the names of these Defendants when they become known.

**FACTS**

6.

In December 2006, an Easy Bake Oven was purchased as a Christmas present for Natasha Lazo, Plaintiff's ten-year old cousin, at the Costco store in Port Chester, Westchester County, New York. The Easy Bake Oven was taken to the Plaintiff's aunt's residence. On or about December

2

26, 2006, the Oven was taken out of the box. During a family dinner, on or about
February 20, 2007 the Plaintiff suddenly had her hand entrapped in the opening of the Oven while
the Oven was activated. C.C. was unable to free her hand, and her hand started to burn inside the
Oven. The Plaintiff's aunt tried to free her hand out of the opening of the Oven. The Plaintiff's
aunt, unable to free Plaintiff's hand from the oven, unplugged the Oven from the outlet. Plaintiff's
hand was finally removed from the Oven severely burnt. The Plaintiff was rushed to the emergency
room of a local hospital. C.C. was traumatized for hours and is still suffering from the nightmare of
having her hand trapped and burnt in a large box. The incident was a result of the concurrent
negligence and/or reckless conduct of the named Defendants whose acts and/or omissions acted in
concert resulting in the entrapment and the Plaintiff's injuries.

## CAUSES OF ACTION

### 7.

The Plaintiffs re-allege paragraphs 1-6 as if fully set forth herein.

### 8.

The Easy Bake Oven was unreasonably dangerous to the users of the product and those
around the product. The Oven was designed in a defective manner and/or was defective because
the product deviated in a material way from the manufacturer's specifications or from otherwise
similar units manufactured to the same specifications and/or they failed to contain adequate
warnings or instruction and/or it breached an express warranty or failed to conform to other
expressed factual representations relied upon by the purchaser and user of machinery, equipment or
products. The defective and unreasonably dangerous condition of the product was a direct and
proximate cause of the injuries to Plaintiff.

3

9.

The cause of the entrapment of the Plaintiff's hand was the result of either the defective and/or negligent design and the component parts or equipment of the Easy Bake Oven by these Defendants and/or the negligent design and testing of component parts or equipment and/or the failure to warn about the dangers associated with component parts and/or equipment of the Easy Bake Oven by these Defendants.

## STRICT LIABILITY AND PRODUCT LIABILITY

10.

The Plaintiff re-alleges paragraphs 1-9 as if fully set forth herein.

11.

The Plaintiff is informed and believes that the Easy Bake Oven was then in the condition existing when the product was sold and/or delivered to Costco in One Westchester Avenue, Port Chester, New York 10573 and the condition of the Easy Bake Oven remained substantially unchanged when the Plaintiff sustained her injuries.

12.

The Easy Bake Oven was defective in its design, workmanship, construction, manufacture, marketing and testing and investigation, and a result was defective, unsafe and inadequate for the use for which it was made, intended to be used and was being used.  The Easy Bake Oven was unreasonably dangerous because of these Defendants' negligence.

4

## JULY 19, 2007 RECALL OF 1,000,000 EASY BAKE OVENS

### 13.

On July 19, 2007, the U.S. Consumer Product Safety Commission announced the recall of approximately 1,000,000 Easy Bake Ovens. (Please see Exhibit A). The hazard presented was that young children could insert their hands into the oven's opening and get their hands or fingers caught, posing an entrapment or burn hazard. The Defendants received 249 reports of children getting their hands or fingers caught in the Oven's opening, including 77 reports of burns. The Ovens were sold from May 2006 through July 2007. The recall covers Model No. 65805. The Plaintiff's cousin's Oven is contained in the Recall.

### 14.

Hasbro negligently, wantonly, or improperly failed to inspect and/or test the Easy Bake Ovens, which proper inspection would have revealed the design and operational defects of this product. The Defendants also failed to warn or adequately warn that the Oven increased the danger of entrapment or burns. The Defendants failed to warn or adequately warn of the extremely dangerous environment created by the Easy Bake Oven.

### 15.

The Defendants knew, or should have known, that the Easy Bake Oven and the component parts or equipment of the Easy Bake Oven would be used in the Manner complained of, and nevertheless, marketed the use of the Oven to children like Plaintiff C.C. without adequate safety warnings and/or safety instructions.

16.

The Easy Bake Oven and component parts or equipment, if properly designed, manufactured and marketed, would not have been inherently dangerous but, because of its defective design, manufacturing and marketing, were unreasonably dangerous to the Plaintiff who was unaware of the dangers, hazards, and peril posed by the Easy Bake Oven and component parts or equipment.

17.

As a direct and proximate result of the defects in Defendant's Easy Bake Oven and the component parts or equipment of the Easy Bake Oven and of the failure of Defendants to give the Plaintiff adequate safety warnings of those defects, the Plaintiff sustained damages complained of herein. Defendants are liable to Plaintiff pursuant to §402A of the Restatement of Torts (Second) or similar state law.

**BREACH OF EXPRESS WARRANTIES**

18.

The Plaintiff re-alleges paragraphs 1-17 as if fully set forth herein.

19.

The Plaintiff avers that the Defendants are jointly and/or severally liable for the injuries to the Plaintiff, and for the resulting damages, in that the Easy Bake Oven was defectively designed and manufactured and in a defective condition when sold to the Plaintiff thereby violating the express warranties.

6

20.

The Plaintiff relied upon the skill and judgment of Defendants and upon Defendants'

express warranty that Easy Bake Oven was safe.

21.

As a result of the defects in material and workmanship, Defendants breached their express

warranty that the Easy Bake Oven was in a marketable condition, safe for user by ultimate users and

in particular the Plaintiff.

22.

As a direct and proximate result of the breach of express warranty by Defendants, the

Plaintiff sustained damages.

**BREACH OF IMPLIED WARRANTY OF FITNESS**

23.

The Plaintiff re-alleges paragraphs 1-22 as if fully set forth herein.

24.

Defendants impliedly warranted that Easy Bake Oven when used was fit for the purpose for

which it was designed, that it was safe and suitable product to be used by children, that the product

was equipped with safety features that would protect the users, and that said product was fit and

suitable for that purpose.  In reliance upon Defendants skill and judgment and the implied

warranties of fitness for that purpose, the Plaintiff used and/or operated the Easy Bake Oven.

25.

The Easy Bake Oven was, in fact, not fit for use for its intended purpose and Defendants

breached the implied warranties set forth above.

7

26.

As a direct and proximate result of that breach of warranty, the Plaintiff sustained damages.

27.

Defendant's actions constitute a breach of the implied warranty set forth in §2-314 of the

U.C.C. Article 2, and its actions are in violation thereof.

## IMPLIED WARRANTY OF MERCHANTABILITY

28.

The Plaintiff re-alleges paragraphs 1-27 as if fully set forth herein.

29.

Defendants impliedly warranted that the above-mentioned Easy Bake Oven was of

merchantable quality, fit, safe, and in proper condition for the ordinary use for which it was

designed and used.

30.

In reliance upon said warranty of merchantability, the Plaintiff used and operated the Easy

Bake Oven.

31.

The Easy Bake Oven was not of merchantable quality and was unfit, unsafe, and unsuitable

for the purpose for which it was intended.

32.

As a direct and proximate result of that breach of warranty, the Plaintiff sustained damages.

33.

Defendant's actions constitute a breach of the implied warranty set forth in §2-314 of the U.C.C. Article 2, and its actions are in violation thereof.

## NEGLIGENCE

34.

The Plaintiff re-alleges paragraphs 1-33 as if fully set forth herein.

35.

Defendants were careless and negligent in designing, manufacturing, testing, selling and placing into the stream of commerce, the Easy Bake Oven, and in failing to warn potential users and operators of the inherently dangerous characteristics of that product.

36.

The direct negligent acts of the Defendants were the proximate result of the Plaintiff sustaining severe injuries as set forth below.

## WILLFUL AND/OR NEGLIGENT
## INFLICTION OF EMOTIONAL DISTRESS

37.

The Plaintiff re-alleges paragraphs 1-36 as if fully set forth herein.

38.

The Defendants' actions and/or inactions were malicious, intentional, willful, wanton, grossly careless, indifferent, reckless, and/or negligent and said conduct resulted in the entrapment of the Plaintiff's hand causing the Plaintiff's personal injuries, anxiety, distress, fear, aggravation and inconvenience. The Defendants' acts and/or inactions constitute the direct, sole and proximate cause of the mental and emotional distress suffered by, and continued to be suffered by, the

Plaintiff, and such damages were reasonably foreseeable consequences of Defendants' acts.

## RES IPSA LOQUITUR

### 39.

The Plaintiff re-alleges paragraphs 1-38 as if fully set forth herein.

### 40.

The occurrence and injury to Plaintiff C.C. does not ordinarily happen without negligence. The occurrence and injury were caused by an instrument within the exclusive control of the Defendants. The occurrence and injury was not due to contribution or voluntary action by the Plaintiff C.C. Therefore, the Defendants are liable under the doctrine of *Res Ipsa Loquitur*.

### 41.

Plaintiff C.C. was under seven (7) years old at the time of the incident. Therefore, she cannot be found negligent under the "Rule of Sevens."

## DAMAGES

### 42.

The Plaintiff re-alleges paragraphs 1-41 as if fully set forth herein.

### 43.

As a of the Defendants' conduct, the Plaintiff suffered the following damages:

(a)    Physical pain and suffering;

(b)    Emotional and mental anguish and suffering;

(c)    Loss of enjoyment of life;

(d)    Loss of society and companionship;

(e)    Medical and related expenses;

(f)      Upon information and belief, permanent scarring, disfigurement and humiliation.

## PUNITIVE DAMAGES

### 44.

The Plaintiff re-alleges paragraphs 1-43 as if fully set forth herein.

### 45.

Further, the Plaintiff would show that her injuries were directly and proximately caused by the Defendants' and/or their agents, servants, and employees gross negligence, omissions, conscious indifference, and/or utter disregard for the welfare of the Plaintiff and other children, and the Defendants are liable for breach of warranty, negligence, gross negligence, and/or are liable and/or strictly liable under the products liability laws and statutes of the State of New York. Therefore, the Plaintiff is entitled to damages.

### 46.

The Plaintiff herein would show that the acts of the Defendants were intentional, willful, wanton, insensitive, careless, reckless, and grossly negligent; that their conduct gives rise to punitive damages; and the Plaintiff specifically request the award of such punitive damages.

WHEREFORE, the Plaintiff, ALCIRA C. ORTIZ, NATURAL MOTHER and LEGAL GUARDIAN OF C.C., A MINOR, by and through her attorneys, DEL CARMEN & MANGAL, P.C., prays for relief against Defendants, HASBRO, INC., COSTCO, INC. and JOHN DOES 1-15, as follows:

1.      General damages in a sum in excess of the jurisdictional minimum of this Court;

2.      Medical, incidental, hospital, and service expenses according to proof;

3.      Prejudgment and post judgment interest as provided by law;

11

4.    Compensatory damages in excess of the jurisdictional minimum of the Court, according to proof;

5.    Consequential damages in excess of the jurisdictional minimum of the Court, according to proof;

6.    Punitive and exemplary damages;

7.    Attorney's fees, expenses, and costs of this action; and

8.    Such further relief as this Court deems necessary, just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all claims so triable in this action.

RESPECTFULLY SUBMITTED, this the 7th day of March 2008.

ALCIRA C. ORTIZ, NATURAL MOTHER
AND LEGAL GUARDIAN OF C.C., A MINOR
PLAINTIFF

BY: _____
    YOVENDRA MANGAL, ESQ.

YOVENDRA MANGAL, ESQ. – NY BAR # 4334769
DEL CARMEN & MANGAL, P.C.
87-87 FRANCIS LEWIS BOULEVARD
SECOND FLOOR
QUEENS VILLAGE, NY 11427
TELEPHONE: 718-464-4448
FACSIMILE:  718-464-0034
DCMLAWS@GMAIL.COM

12

**EXHIBIT A**

# NEWS from CPSC

## U.S. Consumer Product Safety Commission

Office of Information and Public Affairs                  Washington, DC 20207

FOR IMMEDIATE RELEASE                 Firm's Recall Hotline: (800) 601-8418
July 19, 2007                         CPSC Recall Hotline: (800) 638-2772
Release #07-245                       CPSC Media Contact: (301) 504-7908
                                      Easy-Bake Media Contact: (401) 727-5318

## New Easy-Bake Oven Recall Following Partial Finger Amputation; Consumers Urged to Return Toy Ovens

WASHINGTON, D.C. - The U.S. Consumer Product Safety Commission, in cooperation with the firm named below, today announced a voluntary recall of the following consumer product. Consumers should stop using recalled products immediately unless otherwise instructed.

**Name of Product:** Easy-Bake Ovens

**Units:** About 1 million

**Manufacturer:** Easy-Bake, a division of Hasbro, Inc., of Pawtucket, R.I

**Hazard:** Young children can insert their hands into the oven's front opening, and get their hands or fingers caught, posing entrapment and burn hazards.

**Incidents/Injuries:** Since the repair program announced in February, Easy-Bake has received 249 reports of children getting their hands or fingers caught in the oven's opening, including 77 reports of burns, 16 of which were reported as second and third-degree burns. Easy-Bake also received one report of a serious burn that required a partial finger amputation to a 5-year-old girl.

**Description:** The Easy-Bake Oven is a purple and pink plastic oven that resembles a kitchen range with four burners on top and a front-loading oven. "Easy Bake" is printed on the front of the oven. Model number 65805 and "Hasbro" are stamped into the plastic on the back of the oven. This recall includes all units with the retrofit kit. The Easy-Bake Oven is an electric toy and is not recommended for children under eight years of age. Ovens sold before May 2006 are not included in this recall.

**Sold at:** Toys "R" Us, Wal-Mart, Target, KB Toys and other retailers nationwide from May 2006 through July 2007 for about $25.

**Manufactured in:** China

**Remedy:** Caregivers should immediately take the recalled Easy-Bake Oven away from children, and call Easy-Bake for instructions on how to return the toy oven for a voucher towards the purchase of another Hasbro product.

**Consumer Contact:** For additional information, contact Easy-Bake at (800) 601-8418 anytime, or visit the firm's Web site at www.easybake.com



**Exhibit B**

5 of 100 DOCUMENTS

**CERVECERIA MODELO, S.A. DE C.V. and MARCAS MODELO, S.A. DE C.V., Plaintiffs, -against- USPA ACCESSORIES LLC d/b/a CONCEPT ONE ACCESSORIES, Defendant.**

**07 Civ. 7998 (HB)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2008 U.S. Dist. LEXIS 28999*

**April 10, 2008, Decided**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiffs licensors sued defendant licensee, alleging trademark infringement, trademark dilution, unfair competition, injury to business reputation, and breach of contract. The licensee filed a counterclaim alleging tortious interference with contract and seeking putative damages. The licensors moved to dismiss the counterclaim and to strike the putative damages claim. The licensee contested the motion.

**OVERVIEW:** The licensing agreement permitted the licensee to use the licensors' beer trademarks in the manufacture, sale, and distribution of certain products. In terminating the agreement, the licensors alleged that the licensee sold products bearing designs that were not approved. The tortious interference with contract counterclaim was based on the licensee's allegation that, due to the licensors' interference, third party retailers cancelled their orders. The court granted the motion to dismiss this counterclaim, with leave to replead, because the licensee failed to explicitly allege that a third-party retailer breached a contract; the alleged cancellations left open the possibility that the third-party retailers lawfully terminated their agreements. Contrary to the licensors' contention, the court found that the counterclaim sufficiently averred that the licensors' alleged contractual interference was without justification. The court granted the motion to strike the punitive damages request. Such damages were not recoverable since the licensors' allegedly interfering conduct was done to protect their trademarks, and thus, it was not egregious or directed at the public.

**OUTCOME:** The court granted the licensors' motion and dismissed the licensee's tortious interference with contract counterclaim with leave to replead to include allegations that third-party retailers explicitly breached their contracts with it. The court also granted the licensors' motion to strike the licensee's request for punitive damages.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
*Civil Procedure > Pleading & Practice > Pleadings > Counterclaims > General Overview*
[HN1] A motion to dismiss is properly granted when a complaint or counterclaim provides no more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. In considering a motion to dismiss under *Fed. R. Civ. P. 12(b)(6)*, a court must determine whether the claimant has stated a claim upon which relief may be granted. The factual allegations within a claim must be enough to raise a right to relief above the speculative level. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the pleading. When deciding a motion to dismiss, a court must accept all the well-pleaded allegations of the claim as true, even if doubtful in fact, and must draw all reasonable inferences in the claimant's favor. While Twombly does not require heightened fact pleading of specifics, it does require enough facts to nudge a counter-claimant's claims across the line from conceivable to plausible.

*Torts > Business Torts > Commercial Interference > Contracts > Elements*
[HN2] To state a valid claim for tortious interference with contract under New York law, a plaintiff must allege: (1) the existence of a valid contract; (2) plaintiffs' knowledge of that contract; (3) plaintiffs' intentional procurement of a breach of that contract without justification; (4) actual breach of the contract, and (5) resulting damages.

*Torts > Business Torts > Commercial Interference > Contracts > Elements*
[HN3] To state a claim for tortious interference with contract a claimant must specifically allege that a third party breached its contract.

*Torts > Business Torts > Commercial Interference > Contracts > Elements*
[HN4] The "improperly" and "without justification" elements of tortious interference with contract are indistinguishable in the case law, and courts in the U.S. Court of Appeals for the Second Circuit appear to use the terms interchangeably. The keystone of tortious interference with contract as set forth in *Restatement (Second) of the Law of Torts (1977), § 766*, is the adverb "improperly," a term selected in preference to the phrase "without justification" appearing frequently in judicial decisions.

*Torts > Business Torts > Commercial Interference > Contracts > Elements*
[HN5] To determine whether the interference was "without justification" or "improper," the New York Court of Appeals balances the factors set forth in *Restatement (Second) of the Law of Torts (1979), § 767*, which includes the nature of the conduct of the person who interferes, the interest of the party being interfered with, the relationship between the parties, the motive and interests sought to be advanced by the one who interferes, the social interests in protecting the freedom of action of that person, the contractual interests of the party interfered with and the proximity or remoteness to the interference of the conduct complained of.

*Torts > Business Torts > Commercial Interference > Business Relationships > Elements*
*Torts > Business Torts > Commercial Interference > Contracts > Elements*
[HN6] To state a claim for tortious interference with contract under New York law, a party need not allege malice on the part of another or that the other used wrongful means to procure the breach. A party need only allege facts that show that the procurement of the breach was without justification. This is the signal difference between a claim for tortious interference with business relations, which requires that the tortfeasor acted "solely out of malice" or used "wrongful means," and a claim for tortious interference with contract, which requires only "improper" conduct.

*Torts > Business Torts > Commercial Interference > Contracts > Elements*
[HN7] Courts uphold complaints and recoveries in actions seeking damages for interference with a contract when the alleged means employed by the one interfering consists of fraudulent representations.

*Civil Procedure > Remedies > Damages > Punitive Damages*
*Contracts Law > Breach > Causes of Action > General Overview*
*Contracts Law > Remedies > Punitive Damages*
[HN8] In New York, punitive damages are not recoverable for an ordinary breach of contract as their purpose is not to remedy private wrongs but to vindicate public rights. However, where the claim for which punitive damages are sought arises from a breach of contract, punitive damages may be recoverable, but only if (1) the conduct is actionable as an independent tort; (2) the tortious conduct was of the egregious nature set forth in Walker v. Sheldon; (3) the egregious conduct was directed to the claimant; and (4) the conduct was part of a pattern directed at the public generally.

*Civil Procedure > Remedies > Damages > Punitive Damages*
*Contracts Law > Remedies > Punitive Damages*
[HN9] Punitive damages are justifiable where a party was engaged in carrying on a virtually larcenous scheme to trap generally the unwary, and where the wrong complained of is morally culpable, or is actuated by evil and reprehensible motives. Although punitive damages have been refused in the "ordinary" fraud and deceit case, the Walker court held that where the fraud, aimed at the public generally, is gross and involves high moral culpability, punitive damages may be recoverable.

*Civil Procedure > Remedies > Damages > Punitive Damages*
*Contracts Law > Breach > Causes of Action > General Overview*

2008 U.S. Dist. LEXIS 28999, *

*Contracts Law > Remedies > Punitive Damages*

[HN10] Under New York law, where there is a close nexus between tortious conduct and the contract from which it is said to arise, for example, where the contract was fraudulently induced or where a party engages in conduct outside the contract but intended to defeat the contract, punitive damages are recoverable only where the culpable party's conduct was directed at the public.

*Civil Procedure > Remedies > Damages > Punitive Damages*
*Contracts Law > Remedies > Punitive Damages*

[HN11] A private party seeking to recover punitive damages must not only demonstrate egregious tortious conduct by which he or she was aggrieved, but also that such conduct was part of a pattern of similar conduct directed at the public generally.

**COUNSEL:** [*1] For Cerveceria Modelo, S.A. DE C.V., Marcas Modelo, S.A. de C.V., Plaintiffs: Darren Wayne Saunders, LEAD ATTORNEY, Kirkpatrick & Lockhart Preston Gates, Ellis, LLP, New York, NY; Mark I. Peroff, LEAD ATTORNEY, Kirkpatrick & Lockhart Preston Gates Ellis LLP, New York, NY.

For USPA Accessories LLC, doing business as Concept One Accessories, Defendant: Ira Daniel Tokayer, Law Offices of Ira Daniel Tokayer, Esq., New York, NY.

For USPA Accessories LLC, Counter Claimant: Ira Daniel Tokayer, Law Offices of Ira Daniel Tokayer, Esq., New York, NY.

For Cerveceria Modelo, S.A. DE C.V., Marcas Modelo, S.A. de C.V., Counter Defendants: Joanna Andrea Diakos, Kirkpatrick & Lockhart Preston Gates Ellis, LLP (NYC), New York, NY.

For Cerveceria Modelo, S.A. DE C.V., Marcas Modelo, S.A. de C.V., Counter Defendants: Darren Wayne Saunders, LEAD ATTORNEY, Kirkpatrick & Lockhart Preston Gates, Ellis, LLP, New York, NY; Mark I. Peroff, LEAD ATTORNEY, Kirkpatrick & Lockhart Preston Gates Ellis LLP, New York, NY; Joanna Andrea Diakos, Kirkpatrick & Lockhart Preston Gates Ellis, LLP (NYC), New York, NY.

**JUDGES:** Hon. HAROLD BAER, JR., District Judge.

**OPINION BY:** HAROLD BAER

**OPINION**

**OPINION & ORDER**

**Hon. HAROLD BAER, JR., District Judge:**

Plaintiffs [*2] Cerveceria Modelo, S.A. de C.V. ("Cerveceria Modelo") and Marcas Modelo, S.A. de C.V. ("Marcas Modelo") move this Court pursuant to *Fed. R. Civ. P. 12(b)(6)* to dismiss the counterclaim for tortious interference with contract brought by Defendant USPA Accessories LLC d/b/a Concept One Accessories ("Concept One"). Plaintiffs also move to strike Concept One's request for punitive damages. For the reasons set forth below, Defendant's counterclaim is hereby dismissed with leave to replead to include allegations that third-party retailers explicitly "breached" their contracts with Defendant. Plaintiffs' motion to strike Defendant's request for punitive damages is granted.

**I. FACTUAL BACKGROUND**

Plaintiff Cerveceria Modelo produces and sells various brands of beer, including Corona Extra and Corona Light ("Corona Beer"). Compl. P 9. Plaintiff Marcas Modelo, an affiliate of Cerveceria Modelo, is the authorized licensor of Cerveceria Modelo's registered trademarks, including Corona Beer trademarks, in the United States and Canada. *Id.* P 10. Both Plaintiffs are Mexican corporations with their principal place of business in Mexico. *Id.* PP 5-6. The entity Marcas Modelo has licensed a wide array of [*3] items. Corona Beer trademarks appear, for example, on sweatshirts, T-shirts, golf and tennis shirts, jackets, hats, caps, sun visors, socks, shorts, bags and flip-flops. *Id.* P 16. Marcas Modelo is the sole and exclusive licensor of Corona Beer trademarks in the United States and Canada. *Id.* P 18. Before a license is approved, the licensee must submit the design to Marcas Modelo. If there is agreement on the design, the licensee submits a sample of the product to Marcas Modelo for quality inspection before it may be brought to market. *Id.* P 19.

Defendant Concept One, a New York limited liability company with its principal place of business in New York, distributes and sells licensed clothing and accessory products and owns the rights to over 100 licenses. *Id.* P 7; Am. Ans. P 7. Marcas Modelo and Concept One entered into a License Agreement, effective January 1, 2007 and extending to December 31, 2007 (the "2007 License Agreement"), whereby Marcas Modelo granted Concept One a limited, revocable, non-exclusive license (as it had in the past) to use Corona Beer trademarks in the manufacture, sale and distribution of certain products in the United States. Compl. Ex. C § 2.1. The 2007 License [*4] Agreement was the last of several consecutive license agreements by which Concept One was licensed to use Corona Beer trademarks. Each agreement was renewable on a calendar year basis. Am. Ans. P 94; *see* Compl. Ex. C § 4.4.

Plaintiffs allege that Concept One violated the 2007 License Agreement by causing to be manufactured and imported numerous products bearing Corona Beer trademarks without Marcas Modelo's approval or authorization and by selling products bearing designs that Marcas Modelo never approved. Compl. PP 30-31; *see* Compl. Ex. C. § 3. On July 26, 2007, Marcas Modelo notified Concept One by letter that it was terminating the 2007 License Agreement due to Concept One's alleged breach, trademark infringement, unfair competition and deceptive business practices. Compl. Ex. G.

## II. PROCEDURAL HISTORY

On September 12, 2007, Plaintiffs brought this action against Concept One for, *inter alia*, trademark infringement, trademark dilution, unfair competition, injury to business reputation and breach of contract. Compl. P 1. On October 22, 2007, Concept One asserted counterclaims for breach of contract, declaratory judgment and tortious interference with business relations, and demanded [*5] punitive damages and other relief. Ans. 14-17. On November 13, 2007, Plaintiffs moved pursuant to *Fed. R. Civ. P. 12(b)(6)* to dismiss Concept One's counterclaim for tortious interference with business relations and to strike its demand for punitive damages. On December 10, 2007, Concept One filed an amended pleading that eliminated the counterclaim for tortious interference with business relations and replaced it with a counterclaim for tortious interference with contract. On December 18, 2007, Plaintiffs moved to dismiss Concept One's new counterclaim for tortious interference with contract; that motion was fully submitted to this Court on February 25, 2008. I must now decide whether to dismiss Concept One's counterclaim for tortious interference with contract and whether to strike Concept One's request for punitive damages.

## III. STANDARD OF REVIEW

[HN1] A motion to dismiss is properly granted when a complaint or counterclaim provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007) ("Twombly")*. In considering a motion to dismiss under *Fed. R. Civ. P. 12(b)(6)*, a court must [*6] determine whether the claimant has stated a claim upon which relief may be granted. The factual allegations within the claim "must be enough to raise a right to relief above the speculative level." *Id.* "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the [pleading]." *Id. at 1969*. When deciding a motion to dismiss, a court must accept all the well-pleaded allegations of the claim as true, even if doubtful in fact, and must draw all rea-

sonable inferences in the claimant's favor. *Id. at 1965; Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008)*. "While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [the counterclaimant's] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) (quoting Twombly, 127 S. Ct. at 1974)*. [1]

> 1    The Second Circuit has observed that *Twombly's* dismissal standard is not limited to antitrust cases. *See Elevator Antitrust Litig., 502 F.3d at 50; Iqbal v. Hasty, 490 F.3d 143, 157 (2d Cir. 2007); ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 n. 2 (2d Cir. 2007)*.

## IV. [*7] DISCUSSION

### A. Motion to Dismiss Counterclaim for Tortious Interference with Contract

[HN2] To state a valid claim for tortious interference with contract under New York law, Concept One must allege: (1) the existence of a valid contract between Concept One and a third party; (2) Plaintiffs' knowledge of that contract; (3) Plaintiffs' intentional procurement of a breach of that contract without justification; (4) actual breach of the contract and 5) resulting damages. *See Kirch v. Liberty Media Corp., 449 F.3d 388, 401 (2d Cir. 2006) (citing Lama Holding Co. v. Smith Barney, Inc., 88 N.Y.2d 413, 424, 668 N.E.2d 1370, 646 N.Y.S.2d 76 (N.Y. 1996))*. Plaintiffs argue that Concept One's counterclaim failed to meet two of these requirements because it did not allege (1) that any retailer breached a contract with Concept One or (2) that Plaintiffs' alleged interference was improper and without justification.

### 1. Failure to Allege a Breach of Contract

[HN3] To state a claim for tortious interference with contract the claimant must specifically allege that a third party breached its contract. *See Kirch, 449 F.3d at 402* (claim dismissed because claimant only alleged that third party "walked away" from contract); *Orange County Choppers, Inc. v. Olaes Enters., Inc., 497 F. Supp. 2d 541, 562 (S.D.N.Y. 2007)* [*8] (claim dismissed because allegations left open possibility that third party lawfully terminated contract or that contract was terminable at will); *Leadsinger, Inc. v. Cole, No. 05 Civ. 5606, 2006 U.S. Dist. LEXIS 55638, 2006 WL 2320544, *12 (S.D.N.Y. Aug. 10, 2006)* (claim dismissed because plaintiff failed to allege relevant terms of contracts with third parties and how third parties breached those terms).

In its counterclaim, Concept One never explicitly alleges that a third-party retailer "breached" a contract with it, but asserts only that as a result of Plaintiffs' interfer-

ence retailers Wal-Mart Stores, Spencer's "and others . . . *canceled*" their contracts, orders and commitments and did not enter into new ones with Defendant for Corona-branded products. Am. Ans. P 114 (emphasis added). Nevertheless, Defendant argues that by "canceled" it meant "breached" and in its February 25, 2008 correspondence to this Court requested leave to amend its counterclaim. During the parties' oral argument Defendant's counsel stated: "I am here to represent to your Honor--I spoke to my client--I'm ready to allege these contracts were breached. That's what I meant to say." Tr. 22:22-25, 23:1.

In *Orange County Choppers*, the court [*9] permitted the plaintiff, under similar circumstances, leave to amend its tortious interference with contract claim. 497 F. Supp. 2d at 562. Finding that "[a]t present, [the plaintiff's] allegations are deficient as a matter of law because they leave open the possibility that [the third party] lawfully terminated the contract or that the contract was terminable at will," and that "this failure of pleading may only be an oversight by counsel," the court dismissed the claim with leave to amend, to include the allegation that the third party breached the contract as a result of the defendant's interference. *Id.* Likewise, here, Defendant's counterclaim for tortious interference with contract cannot proceed as drafted and is dismissed with leave to amend the counterclaim to include the allegation that third-party retailers, including Wal-Mart Stores and Spencer's, or any third party, explicitly "breached" their contracts with Defendant as a result of Plaintiffs' alleged interference.

### 2. Failure to Allege Improper Interference without Justification

Plaintiffs further argue that Defendant's counterclaim fails to allege that Plaintiffs improperly procured the breach of Defendant's contracts with [*10] third-party retailers without justification. [HN4] The "improperly" and "without justification" elements of tortious interference with contract are indistinguishable in the case law, and courts in this Circuit appear to use the terms interchangeably. *See, e.g., Guard-Life Corp. v. S. Parker Hardware Mfg. Corp., 50 N.Y.2d 183, 406 N.E.2d 445, 448, 428 N.Y.S.2d 628 (N.Y. 1980)* (observing that the "keystone" of tortious interference with contract as set forth in *Restatement (Second) of the Law of Torts (1977), § 766*, is "the adverb 'improperly[,]' a term selected in preference to the phrase 'without justification' appearing frequently in judicial decisions"); *Mina Inv. Holdings Ltd. v. Lefkowitz, 184 F.R.D. 245, 251 (S.D.N.Y. 1999)* ("[T]he *Restatement* factors are utilized to determine whether the interference is 'improper'--or as several courts before referred to it, 'without justification' . . . ."); *Kirch, 449 F.3d at 401* (listing "without justifica-

tion" as an element of tortious interference with contract but not "improperly"); *Lama Holding, 88 N.Y.2d at 424* (same).

The Second Circuit in both *International Minerals & Resources, S.A. v. Pappas, 96 F.3d 586, 595 (2d Cir. 1996)* and *Jews for Jesus, Inc. v. Jewish Community Relations Council, 968 F.2d 286, 292 (2d Cir. 1992)*, [*11] noted that [HN5] to determine whether the interference was "without justification" or "improper," the New York Court of Appeals has balanced the factors set forth in *Restatement (Second) of the Law of Torts (1979), § 767*, which include the nature of the conduct of the person who interferes, the interest of the party being interfered with, the relationship between the parties, the motive and interests sought to be advanced by the one who interferes, the social interests in protecting the freedom of action of that person, the contractual interests of the party interfered with and the proximity or remoteness to the interference of the conduct complained of. *See also Guard-Life, 406 N.E.2d at 448.*

It must be emphasized that [HN6] to state a claim for tortious interference with contract under New York law, Defendant need not allege malice on the part of Plaintiffs or that Plaintiffs used wrongful means to procure the breach. *See Kirch, 449 F.3d at 401.* Defendant need only allege facts that show that Plaintiffs' procurement of the breach was without justification. This is the signal difference between a claim for tortious interference with business relations, which requires that the tortfeasor acted "solely [*12] out of malice" or used "wrongful means," and a claim for tortious interference with contract, which requires only "improper" conduct. *See, e.g., Christopher A. Vinas, CPA v. Chubb Corp., 499 F. Supp. 2d 427, 434 (S.D.N.Y. 2007).*

In its Amended Answer and Counterclaims, Defendant alleges that Plaintiffs obtained the identity of Defendant's accounts and were aware of Defendant's contracts, orders, commitments and other business relations, including but not limited to Spencer's orders on or about July 18, 2007 for Corona-brand hats and "combos" and Wal-Mart Stores' orders on or about March 20, 2007, May 31, 2007 and June 11, 2007 for Corona-brand hats, "combos" and flip-flops. Am. Ans. P 107. Defendant further alleges that on or about July 30, 2007, and "on other occasions to be learned in discovery," Plaintiffs

intentionally, knowingly and by wrongful means interfered with defendant's contracts, orders, commitments and other business relations by, *inter alia,* surreptitiously circulating communication addressed to third-party licensees of plaintiffs and upon information and belief others, but also directed at Wal-Mart Stores

and Spencer's and defendant's other ac-
counts, which, *inter alia*, [*13] *falsely
represented that defendant was in breach
of its License Agreement . . . [and Plain-
tiffs] falsely implied that defendant's Li-
cense Agreement had been properly ter-
minated.*

*Id.* PP 108-09 (emphasis added).

The "improper" and "without justification" element of Defendant's counterclaim reaches the kernel of this case: each party claims that the other party breached the 2007 License Agreement. Concept One alleges that, under its license agreements for Corona Beer trademarks prior to 2007, "virtually none" of the more than 1,000 products that it submitted for approval were rejected. *Id.* P 95. Concept One claims, however, that in 2007 Plaintiffs "improperly, without basis, in bad faith and in violation of the [2007] License Agreement" rejected all but approximately six of Concept One's product designs, even though they allegedly met the contractual standards, and that Plaintiffs' termination of the License Agreement was thus improper. *Id.* PP 98, 100. Plaintiffs' messages to Defendant's retailers and to other licensees [2] that Defendant--and not Plaintiffs--breached the agreement were, Defendant alleges, therefore "without any justification." *Id.* PP 108, 113. Indeed, with its papers in [*14] opposition to Plaintiffs' motion to dismiss, Defendant included a letter dated July 30, 2007 from a certain "Juan Fernandez" of Marcas Modelo to licensees, indicating that Defendant breached the 2007 License Agreement, and an email dated August 3, 2007 from Juan Fernandez to a certain "Jose Pares Gutierrez" of "Grupo Modelo," suggesting that Marcas Modelo expected that message to "filter" from the licensees to Wal-Mart, one of Defendant's largest customers. *See* Letter and Email attached to Def.'s Reply (Feb. 25, 2008); Am. Ans. P 108 (referring to communications from Plaintiffs to licensees on or about July 30, 2007).

2  Defendant claims that Plaintiffs expected the other licensees to relay their messages to Defendant's retailers.

The Court of Appeals of New York in *Guard-Life* noted that it has [HN7] "upheld complaints and recoveries in actions seeking damages for interference when the alleged means employed by the one interfering . . . consist[ed] of fraudulent representations . . . ." *406 N.E.2d at 451.* Here, Defendant alleges that Plaintiffs' letters to retailers and other licensees included a fraudulent misrepresentation, that Defendant breached the 2007 License Agreement.

Plaintiffs, however, [*15] argue that their letters were proper and justified because they had the right to protect their trademarks. Plaintiffs point to Judge Sweet's decision in *P. Kaufmann, Inc. v. Americraft Fabrics, Inc.*, 232 F. Supp. 2d 220 (S.D.N.Y. 2002), in which the plaintiff, a fabric designer, sued its competitor for copyright infringement and related claims. *Id.* at 220. The defendant filed a counterclaim for tortious interference with contract and alleged that the plaintiff acted improperly when it sent a letter to the defendant's customers stating that the defendant had copied the plaintiff's design. *Id.* at 223. The plaintiff argued, as Plaintiffs here, that its action was proper because it had an economic justification, namely, to protect its copyright. *Id.* at 225. Judge Sweet agreed and held that "[s]eeking to protect a copyright by alerting a third party that the copyright is being infringed constitutes a justification defense to this claim." *Id.* Accordingly, the court dismissed the counterclaim for tortious interference with contract. *Id.*

While the facts in *Kaufmann* and in the case at bar are similar, a crucial difference is that the parties in *Kaufmann* had no contractual relationship. Here, [*16] in contrast, the parties' contractual relationship spanned years, and each party claims that the other party breached the contract.

Further, accepting Defendant's well-pleaded allegations as true and construing the allegations in the light most favorable to Defendant, as I must, I am unwilling at this stage of the litigation to dismiss Defendant's counterclaim. In any event, as a rule, whether the actions of one party or the other were improper or justified ought not be decided at this juncture. On that score, I am concerned that while Plaintiffs had the right to protect their trademarks, a jury could plausibly find that Plaintiffs' communications to retailers and other licensees to the effect that Defendant breached the 2007 License Agreement were improper and without justification. *See Mina Inv. Holdings*, 184 F.R.D. at 251 (noting that the issue of when interference with contracts will be deemed "improper" is a "factually sensitive issue").

**B. Motion to Strike Defendant's Request for Punitive Damages**

[HN8] In New York, "[p]unitive damages are not recoverable for an ordinary breach of contract because their purpose is not to remedy private wrongs but to vindicate public rights." *Rocanova v. Equitable Life Assurance Soc'y of the United States*, 83 N.Y.2d 603, 613, 634 N.E.2d 940, 612 N.Y.S.2d 339 (N.Y. 1994). [*17] However, where the claim for which punitive damages are sought arises from a breach of contract, punitive damages may be recoverable, but only if (1) the conduct is actionable as an independent tort; (2) the tortious conduct was of the egregious nature set forth in *Walker v.*

*Sheldon, 10 N.Y.2d 401, 404-05, 179 N.E.2d 497, 223 N.Y.S.2d 488 (N.Y. 1961)*; (3) the egregious conduct was directed to the claimant; and (4) the conduct was part of a pattern directed at the public generally. *New York Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 316, 662 N.E.2d 763, 639 N.Y.S.2d 283 (N.Y. 1995)*; *AD Rendon Commc'ns, Inc. v. Lumina Ams., Inc., No. 04 Civ. 8832, 2007 U.S. Dist. LEXIS 75625, 2007 WL 2962591, *8 (S.D.N.Y. Oct. 9, 2007)*; *Rocanova, 83 N.Y.2d at 613.*

In *Walker*, the Court of Appeals of New York held that [HN9] punitive damages are justifiable where a party was "engaged in carrying on a virtually larcenous scheme to trap generally the unwary," and where "the wrong complained of is morally culpable, or is actuated by evil and reprehensible motives." *10 N.Y.2d at 404* (quotation marks and internal citation omitted). Although punitive damages have been refused in the "ordinary" fraud and deceit case, the *Walker* court held that "where the fraud, aimed at the public generally, is gross and involves [*18] high moral culpability," punitive damages may be recoverable. *Id. at 405*. Thus in *Serota v. Mayfair Super Markets, Inc., 15 A.D.3d 385, 790 N.Y.S.2d 173, 174 (N.Y. App. Div. 2005)*, cited by Defendant, the court sustained a punitive damages award where the tortious act "involved a wanton or reckless disregard of [the other party's] rights under its lease."

Plaintiffs' alleged actions, however, do not give rise to the "high moral culpability" described by New York and federal courts in this Circuit. *See, e.g., Maxan Curtain Mfg. Corp. v. Chem. Bank, 230 A.D.2d 832, 646 N.Y.S.2d 701, 702 (N.Y. App. Div. 1996)* (permitting claim for punitive damages for tortious interference with contract where plaintiff alleged that defendant's vice-president "maliciously ordered a bank employee to dishonor the plaintiff's checks despite the fact that the plaintiff had sufficient funds in its checking account"; this "evince[d] a degree of moral culpability for which a factfinder may consider the assessment of punitive damages"); *Int'l Minerals & Res., S.A. v. Am. Gen. Res., Inc., No. 87 Civ. 3988, 2000 U.S. Dist. LEXIS 787, 2000 WL 97613, *2 (S.D.N.Y. Jan. 27, 2000)* (finding that, "[w]hile a close call, . . . a reasonable jury could have found that the defendants [*19] . . . acted with the requisite state of mind" to justify punitive damages for tortious interference with contract, where defendants back-dated documents and attempted to "pay off" a witness).

Defendant has not sufficiently alleged that Plaintiffs engaged in such malicious conduct when they sent letters to retailers and other licensees stating that Defendant had breached the 2007 License Agreement. While a jury could find that the letters constituted "improper" conduct, they were not "actuated by evil and reprehensible motives," but rather by Plaintiffs' desire to protect their trademarks. *See Walker, 10 N.Y.2d at 404*. Therefore,

Defendant's allegations that Plaintiffs engaged in improper and unjustified conduct are not sufficient to support a claim for punitive damages.

Defendant argues that under New York law it need not allege that Plaintiffs' conduct was directed to the public. The case law, however, shows otherwise. [HN10] Under New York law, "where there is a close nexus between the . . . tortious conduct and the contract from which it is said to arise, for example, where the contract was fraudulently induced or where a party engages in conduct outside the contract but intended to defeat [*20] the contract," punitive damages are recoverable only where the culpable party's conduct was directed at the public. *MacQuesten Gen. Contracting, Inc. v. HCE, Inc., 296 F. Supp. 2d 437, 446-47 (S.D.N.Y. 2003)* (internal quotation marks and citation omitted).

It is undisputed that there was a close nexus between the 2007 Licensing Agreement and the alleged tortious conduct. Therefore, Defendant must demonstrate that Plaintiffs' alleged tortious interference with contract was part of a practice directed at the public generally. Because Defendant has failed to do so its claim for punitive damages must be dismissed on this ground, as well. *See, e.g., Rivas v. AmeriMed USA, Inc., 824 N.Y.S.2d 41, 43, 34 A.D.3d 250 (N.Y. App. Div. 2006)* (dismissing punitive damages claim because plaintiffs failed to demonstrate that egregious tortious conduct was "part of a pattern of similar conduct directed at the public generally"); *Walker, 10 N.Y.2d at 405* (punitive damages recoverable provided the conduct was "aimed at the public generally"); *Rocanova, 83 N.Y.2d at 613* ([HN11] "A private party seeking to recover punitive damages must not only demonstrate egregious tortious conduct by which he or she was aggrieved, but also [*21] that such conduct was part of a pattern of similar conduct directed at the public generally."). [3]

3  To support its argument that it need not allege conduct directed at the public, Defendant cites several cases that have been shown to state an incorrect standard for punitive damages. For example, Defendant relies on *Brown v. AXA RE, No. 02 Civ. 10138, 2004 U.S. Dist. LEXIS 7624, 2004 WL 941959 (S.D.N.Y. May 3, 2004)*, in which the court opined that punitive damages are recoverable, "even if there is no harm aimed at the general public, 'so long as the very high threshold of moral culpability is satisfied.'" *2004 U.S. Dist. LEXIS 7624, [WL] at *9* (quoting *Blank v. Baronowski, 959 F. Supp. 172, 179 (S.D.N.Y. 1997)* and *Giblin v. Murphy, 73 N.Y.2d 769, 772, 532 N.E.2d 1282, 536 N.Y.S.2d 54 (N.Y. 1988)*). However, as courts in this Circuit have observed, both *Brown* and the cases quoted by it, *Blank* and

2008 U.S. Dist. LEXIS 28999, *

*Giblin,* misstated the law because they either were decided after *Rocanova* or relied on pre-*Rocanova* case law. *See, e.g., Conocophillips v. 261 E. Merrick Rd. Corp., 428 F. Supp. 2d 111, 129 (E.D.N.Y. 2006); Baxter Diagnostics, Inc. v. Novatek Med., Inc., No. 94 Civ. 5220, 1998 U.S. Dist. LEXIS 15093, 1998 WL 665138, *2 (S.D.N.Y. Sept. 25, 1998); Day Spring Enters., Inc. v. LMC Int'l, Inc., No. 98 Civ. 658, 2004 U.S. Dist. LEXIS 19927, 2004 WL 2191568, *32 (W.D.N.Y. Sep 24, 2004).*

Because [*22] Defendant has failed to allege that Plaintiff's conduct was egregious and directed at the public generally, its claim for punitive damages cannot proceed.

## V. CONCLUSION

For the foregoing reasons, Defendant's counterclaim for tortious interference with contract is hereby dismissed with leave to replead to include allegations that third-party retailers explicitly "breached" their contracts with Defendant. Plaintiff's motion to strike Defendant's claim for punitive damages is hereby GRANTED. The parties are reminded that, pursuant to the pretrial scheduling order, any dispositive motions must fully briefed and filed on or before June 15, 2008, and the parties have chosen August 2008 as the month of trial.

**IT IS SO ORDERED.**

New York, New York

April 10, 2008

/s/ Harold Baer

U.S.D.J.

**Exhibit C**

31 of 100 DOCUMENTS



Caution
As of: Jun 02, 2008

**JENNIFER GERMAN and WELLINGTON GERMAN, infants by their Mother and Natural Guardian ANA MARITZA GERMAN, and ANA MARITZA GERMAN, Individually, Plaintiffs, v. FEDERAL HOME LOAN MORTGAGE CORP., PROPERTY SERVICES COMPANY, CAISI MANAGEMENT COMPANY, INC., 1710 MONTGOMERY REALTY ASSOC., L.P., and JEROME DEUTSCH, Defendants.**

93 Civ. 6491 (RWS)

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*1994 U.S. Dist. LEXIS 8716*

**June 27, 1994, Decided
June 28, 1994, Filed**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiffs, apartment residents, filed an action against defendants, owners of the apartment building and its property managers during the time the residents lived in the building, to recover damages for lead poisoning from the building. The residents filed a motion to amended their complaint to add certain defendants and to ask for injunctive relief and punitive damages.

**OVERVIEW:** The only prejudice that defendants claimed would accrue from an amendment was that they would have been subjected to additional discovery. The court held that that standing alone without a showing of bad faith or undue prejudice would not justify denial of leave to amend. The court granted plaintiffs' motion adding several causes of action against defendants because little opposition to those claims was made and the claims alleged the minimum required to allow amendment to the complaint. The court held that plaintiffs' claims of product liability was allowed because a lessor could be liable under strict product liability for leasing a defective product. Defendants opposed the amended complaints class action allegations and its claims for injunctive relief. The court held that defendants had not demonstrated that the proposed amendments failed to raise at least colorable

grounds for relief. The court denied the motion to amend to add a separate cause of action for punitive damages because under New York law no separate cause of action for punitive damages could have been pleaded.

**OUTCOME:** The court granted plaintiffs motion to amend their complaint except for the amendment that stated a separate cause of action for punitive damages.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > Leave of Court*
[HN1] *Fed. R. Civ. P. 15(a)* provides that leave to amend a complaint shall be freely given when justice so requires. This mandate is to be heeded.

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > General Overview*
[HN2] In interpreting the when justice so requires standard of *Fed. R. Civ. P. 15*, if the movant has at least colorable grounds for relief, justice does so require unless a plaintiff is guilty of undue delay or bad faith or unless permission to amend would unduly prejudice the opposing party. If the underlying facts or circumstances relied

1994 U.S. Dist. LEXIS 8716, *

on by the plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. This liberal policy favoring amendments flows from the underlying purpose of *Rule 15*, which is to facilitate decision on the merits, rather than on the pleadings or technicalities.

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > General Overview*
[HN3] A defendant being subjected to additional discovery, which, standing alone without a showing of bad faith or undue prejudice will not justify denial of leave to amend.

*Contracts Law > Types of Contracts > Lease Agreements > Personalty Leases > General Overview*
*Torts > Premises Liability & Property > Lessees & Lessors > General Overview*
*Torts > Products Liability > Strict Liability*
[HN4] A lessor can be liable under strict product liability for leasing a defective product.

*Civil Procedure > Class Actions > Certification*
*Civil Procedure > Class Actions > Prerequisites > General Overview*
[HN5] It is not necessary that each and every issue be raised by each and every member of a class or class representatives, a grouping of similar claims has generally been allowed.

*Civil Procedure > Remedies > Damages > Punitive Damages*
*Torts > Damages > Punitive Damages > Conduct Supporting Awards*
[HN6] Under New York law, there can be no separate cause of action for punitive damages. Such a claim for damages constitutes merely an element of the single total claim for damages on the underlying cause of action. The complaint is deemed to demand punitive damages, which are recoverable only if the proof establishes there was such gross, wanton, or willful fraud or other morally culpable conduct to a degree sufficient to justify an award of punitive damages.

**COUNSEL:** [*1] For Plaintiff: FITZGERALD & FITZGERALD, P.C., Yonkers, NY, By: JOHN E. FITZGERALD, ESQ., Of Counsel and BRONX LEGAL SERVICES, Bronx, NY, By: LUCY BILLINGS, ESQ.

For Defendants Federal Home Loan Mortgage Corporation and Caisi Management Company, Inc., New York,

NY, By: WILLIAM G. BALLAINE, ESQ., THOMAS G. MERRILL, ESQ., Of Counsel. For Defendants 1710 Montgomery Realty Assoc., P.C., Property Services Company, Wittenstein, Wagman and Deutsch, Mitchel Field, NY, By: STEPHEN P. BURKE, ESQ., Of Counsel.

**JUDGES:** SWEET

**OPINION BY:** ROBERT W. SWEET

**OPINION**

*OPINION*

**Sweet, D.J.**

   Plaintiffs have moved, pursuant to *Rules 15* and *19, Fed. R. Civ. P.*, for an order permitting them to amend their complaint and add certain defendants. For the reasons set forth below, this motion is granted in part and denied in part.

   *Parties*

   Plaintiff Jennifer German has resided at 1710 Montgomery Avenue (the "Building"), Apartment 2H, Bronx, New York ("Apartment 2H"), since her birth in 1991. She was diagnosed as lead poisoned on December 9, 1992.

   Plaintiff Wellington German has resided in Apartment 2H since 1988. He was diagnosed as lead poisoned on December 23, 1992.

   Plaintiff Ana Maritza German (together with Jennifer and [*2] Wellington German, the "Germans"), is the mother and natural guardian of Jennifer and Wellington German. She has resided in Apartment 2H since 1988.

   Defendant Federal Home Loan Mortgage Corporation ("FHLMC"), is a privately-owned corporate instrumentality of the United States chartered by Congress to increase the supply of money that primary mortgage lenders can make available to home buyers. *See 12 U.S.C. §§ 1451-1459.* FHLMC fulfills its mission by purchasing mortgages from financial institutions covering residential dwellings located throughout the United States. *12 U.S.C. § 1454(a)(1).* FHLMC allegedly was the owner of the Building from December 1988 until October 31, 1991, and from May 8, 1992, until September 16, 1992.

   Defendant 1710 Montgomery Realty Associates, L.P. ("1710") and partners Todd Wittenstein ("Wittenstein"), Alex Wagman ("Wagman"), and Jerome Deutsch ("Deutsch") allegedly have owned the Building from September 16, 1992, until the present. 1710 has its principal office in Valley Stream, New York. Wittenstein

and Deutsch reside in the City of New York. Wagman resides in Valley Stream, New [*3] York.

Defendant CAISI Management Company ("CAISI") was retained as managing agent of the Building between December 1, 1988 and October 31, 1991, and between May 8, 1992 and September 16, 1992. CAISI has its principal place of business in Melville, New York.

Defendant Property Services Company ("PSC") has been the managing agent for the building from September 16, 1992, until the present. PSC is a domestic corporation with its principal place of business in Valley Stream, New York.

### Background and Prior Proceedings

Plaintiffs allege that they have been residents of the Building since December 1988, and that in December 1992, Jennifer and Wellington German were diagnosed as having lead in their blood streams.

Pursuant to a Summons with Notice and Verified Complaint dated July 26, 1993, the Germans instituted an action in Supreme Court, Bronx County, against PSC, CAISI, 1710, FHLMC, Deutsch, Wittenstein, and Wagman. The Complaint sought damages for personal injuries to the infant Germans and sought relief for Ana German in her individual capacity as mother and natural guardian of the infant plaintiffs.

Pursuant to FHLMC's status as an entity created by federal legislation, this [*4] action was timely removed to this Court on October 5, 1993. Argument was heard on the present motion to amend on May 11, 1994, and additional submissions were received from the parties until May 31, 1994. The motion was considered fully submitted as of May 31, 1994.

### Discussion

Rule 15(a) provides that [HN1] leave to amend a complaint "shall be freely given when justice so requires." This Court has noted that "this mandate is to be heeded.'" Morin v. Trupin, 835 F. Supp. 126, 129 (S.D.N.Y. 1993) (quoting Foman v. Davis, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962)); In re Integrated Resources Real Estate Ltd. Partnerships Sec. Litig., 1994 U.S. Dist. LEXIS 5509, at *44 (S.D.N.Y. April 25, 1994).

[HN2] In interpreting the "when justice so requires" standard of Rule 15, the Second Circuit has held that "if the [movant] has at least colorable grounds for relief, justice does so require unless the plaintiff is guilty of undue delay or bad faith or unless permission to amend would unduly prejudice the opposing party." S.S. Silberblatt, Inc. v. East Harlem [*5] Pilot Block-Bldg 1 Hous. Dev. Fund Co., 608 F.2d 28, 42 (2d Cir. 1979). "If the underlying facts or circumstances relied on by a

plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962). "This liberal policy favoring amendments flows from the underlying purpose of Rule 15, which is to 'facilitate decision on the merits, rather than on the pleadings or technicalities." CBS, Inc. v. Ahern, 108 F.R.D. 14, 18 n.4 (S.D.N.Y. 1985).

Any delay associated with the filing of the Proposed Amended Complaint has been adequately explained in the Plaintiffs' moving papers. The only prejudice that the Defendants claim will accrue from an amendment is that they will [HN3] be subjected to additional discovery, which, "standing alone without a showing of bad faith or undue prejudice [will not] justify denial of leave to amend." Concord Asset Mg't v. Intercredit Corp., 1994 U.S. Dist. LEXIS 5854, at *6 (S.D.N.Y. May 5, 1994).

A motion to amend may be denied [*6] if the amended pleading fails to state a claim or would be subject to a motion to dismiss on some other basis, see S.S. Silberblatt, Inc., 608 F.2d 28, 42 (2d Cir. 1979); McNally v. Yarnall, 764 F. Supp. 853, 855 (S.D.N.Y. 1991), but denial of a 'notion to amend based upon the inadequacy of the proposed pleading is disfavored, CBS, Inc., 108 F.R.D. at 19.

### The Proposed Amendments

The Plaintiffs seek to amend their complaint to add the City of New York and Harold Beck, d/b/a Tebec ("Beck"), as defendants. Their proposed amended complaint (the "Proposed Amended Complaint") alleges that the City of New York owned and operated the Building from October 31, 1991, until May 8, 1992, and that Beck was retained as managing agent of the Building from January 1, 1990, to December 31, 1990. There being no opposition to adding the City of New York and Beck as defendants, the Plaintiffs' motion is granted with regard to this proposed amendment. The Proposed Amended Complaint's tenth cause of action, alleging violation of federal law, is directed only against the City of New York, therefore the [*7] Plaintiffs' motion is granted with respect to this proposed amendment as well.

The Proposed Amended Complaint seeks damages on behalf of the Germans. The first, second, third, sixth, seventh, and eighth cause of action, alleging negligence, negligence per se, breach of contract and implied warranty of habitability, nuisance and absolute nuisance, intentional infliction of mental distress, and negligent infliction of mental distress, assert separate causes of action for separate theories of recovery founded on the same negligent conduct and injuries alleged in the original complaint. The Defendants lodge very little opposition to these claims, and these claims allege the mini-

1994 U.S. Dist. LEXIS 8716, *

mum required to allow amendment of the Plaintiffs' complaint. The Plaintiffs' motion is therefore granted with respect to these proposed amendments.

The Defendants object to the Proposed Amended Complaint's fourth cause of action for product liability, claiming that New York law imposes strict product liability only upon the manufacturers of products and those involved in placing a product in the stream of commerce. However, the Plaintiffs claim that the product in question in this case is apartments and dwelling [*8] units, and that all of the defendants are in the business of owning, renting, financing, and selling rental dwelling units. [HN4] A lessor can be liable under strict product liability for leasing a defective product. *See Opera v. Hyva, Inc.*, 86 A.D.2d 373, 450 N.Y.S.2d 615 (4th Dep't 1982); *Nastasi v. Hochman*, 58 A.D.2d 564, 396 N.Y.S.2d 216 (1st Dep't 1977).

The Proposed Amended Complaint's fifth cause of action, alleging strict liability for ultrahazardous substances, asserts colorable grounds for relief, since courts in New York have imposed strict liability on landowners who undertake abnormally dangerous activities. *Doundoulakis v. Town of Hempstead*, 42 N.Y.2d 440, 398 N.Y.S.2d 401, 368 N.E.2d 24 (1977). The Plaintiffs' motion to amend is granted with respect to the Proposed Amended Complaint's fourth and fifth causes of action.

The most substantial opposition to the Proposed Amended Complaint is directed at its class action allegations and its claims for injunctive relief. The Defendants apprehend the Proposed Amended Complaint to [*9] seek damages on behalf of a class and to assert class action claims for equitable relief against all the Defendants under the Lead-Based Paint Poisoning Prevention Act, 42 U.S.C. §§ 4822 et seq. (the "LPPPA"). However, FHLMC's tardily-submitted letter of May 18, 1994, acknowledges that "Plaintiffs do *not* purport to assert any class action damage claims against any defendants. They also admit that violations of federal law alleged in their tenth cause of action concern the City of New York only."

The Proposed Amended Complaint states that:

Plaintiffs bring this action on their own behalf and under *Rule 23, Fed. R. Civ. P.* as representative of the class and subclasses defined herein.

*Class Warning and Notice*

All persons residing on premises either owned, managed, or operated by any of the defendants.

*Sub-Class #1: Medical Monitoring*

All persons age 8 years and under and all women of child-bearing age (12-50 years old) residing in buildings owned, managed, or operated by defendants.

*Sub-Class #2: Abatement*

All persons residing in any building owned, managed or operated by defendants in which a government agency has [*10] cited any apartment for violations of statutes or regulations to prevent lead poisoning.

The Proposed Amended Complaint requests injunctive relief requiring the Defendants, *inter alia*, to warn their tenants about the hazards of lead paint in their housing and to notify their tenants that they have the right to withhold rent because of lead paint in their dwelling; to create a fund to carry out medical monitoring of the Plaintiffs; to submit a plan for the inspection and abatement of lead hazards; to submit a list of all properties owned or managed by the Defendants that have been cited by any government agency for lead paint hazards, all information identifying any of their tenants who have been lead poisoned, and all reports, studies or other information about lead hazards in any of the properties that they own or manage; and to submit all information and communications provided by the insurers of their properties regarding lead hazards. In addition, the Proposed Amended Complaint seeks injunctive relief prohibiting the Defendants from initiating eviction proceedings against any tenant or withholding any portion of any security deposit paid by any tenant without proof that [*11] the tenant's premises has no lead paint in violation of law.

The Plaintiffs in this case have claims against each of the named defendants based on one or more of the theories asserted in the Proposed Amended Complaint. This case is not, therefore, governed by the cases cited by the Defendants, in which the named plaintiff claimed injury by fewer than all of the defendants, and therefore had no standing against any of the other defendants. *See, e.g., Angel Music, Inc. v. ABC Sports, Inc.*, 112 F.R.D. 70, 73-74 (S.D.N.Y. 1986); *Vulcan Soc'y v. Fire Dep't*, 82 F.R.D. 379, 398-99 (S.D.N.Y. 1979). Further, the Plaintiffs would be concretely affected by the injunctive relief requested from each of the Defendants, at least to the extent that all Defendants would participate in providing medical monitoring. [1]

1    The Defendants claim that the claim for medical monitoring "is simply a disguised damage claim" rather than one for injunctive relief.

Courts have held, however, that a medical monitoring program can constitute injunctive relief capable of supporting class certification under *Rule 23, Fed. R. Civ. P.*, and the present Plaintiffs' claim for medical monitoring therefore presents a colorable claim for injunctive relief. *See Cook v. Rockwell Int'l Corp., 151 F.R.D. 378, 387 (D. Colo. 1993)* (collecting cases); Amy B. Blumenberg, *Note: Medical Monitoring Funds: The Periodic Payment of Future Medical Surveillance Expenses in Toxic Exposure Litigation, 43 Hastings L.J. 661 (1992)*.

[*12] The Court makes no determination at this time regarding the ability of the Proposed Amended Complaint to withstand a motion to dismiss. On the present papers, the Defendants have not demonstrated that the proposed amendments fail to raise "at least colorable grounds for relief." *S.S. Silberblatt, Inc., 608 F.2d at 42*.

Also, the Court makes no determination at this time regarding whether a motion for class certification would be successful. However, it is worth noting that [HN5] "it is not necessary that each and every issue be raised by each and every member of the class or class representatives and a grouping of similar claims has generally been allowed." *Vulcan, 82 F.R.D. at 401*. Also, courts in this Circuit have allowed class certification where plaintiffs had dealt with the defendants during different time periods. *See Green v. Wolf Corp., 406 F.2d 291 (2d Cir. 1968)* (allowing named plaintiffs to represent defendants who had purchased stock on basis of different prospectuses issued at different times), *cert. denied, 395 U.S. 977, 23 L. Ed. 2d 766, 89 S. Ct. 2131 (1969)*; [*13] *Fischer v. Kletz, 41 F.R.D. 377 (S.D.N.Y. 1966)* (allowing certification of plaintiff class where plaintiffs purchased securities over two year period during which seven different financial statements were issued). Whether any or all of the classes or subclasses designated in the Proposed Amended Complaint should be certified pursuant to *Rule 23, Fed. R. Civ. P.*, is a question which will be decided when and if a motion for such certification is made.

The Proposed Amended Complaint's ninth cause of action is for outrageous conduct and punitive damages. The original complaint declined to plead a separate cause of action for punitive damages, but included a statement putting the defendants on notice that their acts and omissions were alleged to be wanton and reckless and that punitive damages would be sought. Under New York law:

[HN6] There can be no separate cause of action for punitive damages. Such a claim for damages constitutes merely an element of the single total claim for damages on the underlying cause of action. The complaint is deemed to demand punitive damages, which are recoverable only if the proof establishes there was "such gross, wanton, or [*14] willful fraud or other morally culpable conduct to a degree sufficient to justify an award of punitive damages."

*Steinberg v. Monasch, 85 A.D.2d 403, 406, 448 N.Y.S.2d 200 (1st Dep't 1982)* (quoting *Borkowski v. Borkowski, 39 N.Y.2d 982, 983, 387 N.Y.S.2d 233, 355 N.E.2d 287 (1976))* (citations omitted); *see also Bunker v. Bunker, 73 A.D.2d 530, 422 N.Y.S.2d 403 (1st Dep't 1979)*.

The Plaintiffs offer no justification for their decision to plead, in the amended complaint, a separate cause of action for outrageous conduct and punitive damages. Instead, they offer citations to support their contention that the defendants could be liable for punitive damages. While this contention may be correct, under New York law no separate cause of action for punitive damages may be pled. The Plaintiffs' motion is denied without prejudice with respect to the Proposed Amended Complaint's ninth cause of action.

### Conclusion

For the reasons stated above, the Germans' motion to amend is granted in part and denied in part.

It is so ordered.

[*15] New York, N. Y.

June 27, 1994

ROBERT W. SWEET

U.S.D.J.